UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACQUELINE CROFOOT,

    Plaintiff,                                   CASE NO. 05-CV-10032-BC

v.                                           DISTRICT JUDGE DAVID M. LAWSON
                                              MAGISTRATE JUDGE CHARLES BINDER

MIDMICHIGAN MEDICAL
CENTER-MIDLAND,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT MIDMICHIGAN MEDICAL CENTER-MIDLAND'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**
(Dkt. 16)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant MidMichigan Medical Center-Midland's Motion for Summary Judgment be **GRANTED**.

## II.    REPORT

### A.    Introduction

Pending, pursuant to an Order of Reference from United States District Judge David Lawson, is the above-entitled motion. (Dkt. 18.) Defendant filed the motion on October 21, 2005 (Dkt. 16), Plaintiff responded on November 15, 2005 (Dkt. 19), and Defendant replied on November 22, 2005 (Dkt. 22). A hearing was held on December 6, 2005, and the motion is now ready for Report and Recommendation.

B. Facts

1. Background and Plaintiff's Past Performance

Plaintiff worked at the Defendant Medical Center in the Histology Department since 1990. (Pl.'s Dep., Dkt. 16, Ex. 1 at 55.) Plaintiff had risen to the level of section head in that department and was working in that capacity when she was terminated. (*Id*. at 61.) Randy Wyse, Laboratory Manager, was her supervisor at that time. (*Id*. at 80.)

Plaintiff's past Job Performance Reviews ("JPR") show that Plaintiff had difficulties getting along with other staff members since 2001. Plaintiff recognized her need to "improve communication with the cytology section head [Paula Behm]" according to the 2001 JPR. (*Id*. at 81.) It was important that the cytology and histology areas got along well because they shared laboratory space, supplies, and personnel. (*Id*. at 87.) Plaintiff also acknowledged that she remembers discussing the fact that she "needed to work on being tactful and [that she would] shoot first and ask questions later." (*Id*. at 83.) Plaintiff also recalled her supervisor, Randy Wyse, telling her that she needed to be more patient, but she was not sure what year that discussion took place. (*Id*. at 84.)

In 2002, Plaintiff's JPR revealed that the 2001 issues had not been resolved. Plaintiff's review stated that "she needs to continue improving her communication with the cytology section head" and "stay out of cytology issues." (*Id*. at 85-86.) Plaintiff was again told to be patient in this 2002 JPR. (*Id*. at 90.)

In 2003, Plaintiff acknowledged that her staff had made critical comments about her that were recorded in her JPR. (*Id*. at 96-97.) Plaintiff admitted to being "stressed," and she apologized to her staff during a meeting with Jan Albar, Employee Relations Manager. (*Id*. at 101.) Although Plaintiff then held monthly meetings with her staff, her staff believed that

2

teamwork issues still remained. (*Id*. at 102.) Plaintiff was frustrated with her staff because her staff was not communicating with her, and she felt betrayed and treated unfairly by them. (*Id*. at 103-04.) The only item she disagreed with on the 2003 JPR was the statement that her personal life was affecting decisions at work. (*Id*. at 107-08.)

### 2.     Facts Surrounding Plaintiff's Dismissal

In the fall of 2003, Plaintiff's husband was diagnosed with a mental disorder, was unable to help her care for her three children, and divorce proceedings were pending. (*Id*. at 94-106.) During her deposition, Plaintiff testified that as a result, she was under considerable stress. In September of 2003, new complaints about Plaintiff were brought to the attention of Jan Albar. (Albar Dep., Dkt.16, Ex. 3 at 8.) The complaints included Plaintiff's use of profanity, mood swings, and that her employees were afraid of her and were contemplating quitting if Plaintiff remained. (*Id*. at 8, 36, 46.)

On January 7, 2004, Plaintiff sought medical help for the stress and anxiety she was experiencing. (Pl.'s Dep. at 114.) Her physician gave her a "Certificate of Return to Work" for January 9, 2004, recommending she reduce her work week from five to three days for two months and then resume normal work hours. (Pl.'s Resp., Dkt.19, Ex. 5.) When Plaintiff returned to work on January 8, 2004, to give the certificate to Defendant, Plaintiff admits she inappropriately used profanity when discussing one of her subordinates and that she "disobeyed a directive from her supervisor, Randy Wyse, not to approach the employee who reported the fact that she made the comment to him." (Pl.'s Resp. at 8.)[1] Plaintiff discussed these matters with Jan Albar that day and

---

[1] Plaintiff admitted telling Diane Keeley that she wished Debi Kroll, a bench technician in histology, would "shut the f[***] up" and that she wished Debi "could keep her f[***]ing mouth shut for ten minutes [because] she just never shuts up." (Pl.'s Dep. at 115-16). After that Plaintiff and Diane "were laughing." (*Id*. at 116.)

3

was told to take medical leave the next day (January 9, 2004) and Monday (January 12, 2004), and to speak with her supervisor on January 13, 2004.  (Pl.'s Dep. at 136-37, 160.)

Plaintiff recalls discussing the FMLA with Jan Albar on January 8, 2004. (*Id*. at 157-60.) Plaintiff asked Ms. Albar if she "could think about the short-term disability offer" but at some point also asked about family medical leave.  (*Id*. at 156-57.)  Plaintiff knew of no difference between the two types of leave but stated that she "wasn't disabled for one thing, so for [her] to take a disability leave didn't make sense to [her]."  (*Id*. at 157.)  Plaintiff still believed medical leave was a possibility because "of the things that were happening in [her] personal life [and she] needed time off to get those things straightened around and taken care of." (*Id*. at 158.)  However, in her Second Amended Complaint, Plaintiff avers that the leave requested was "disability leave" and that "Plaintiff was advised that she would be terminated upon the expiration of that leave if she chose that option."  (Pl.'s Second Am. Compl., ¶ 28.)  On the other hand, Plaintiff considered family medical leave and short-term disability leave as "synonymous."  (Pl.'s Dep. at 160.)

Defendant's version of the events is virtually the same except Defendant's agents do not recall family medical leave being discussed.  Defendant's version of the events of that day also diverges in its focus.  While Plaintiff focuses on the fact that leave was discussed, Defendant emphasizes that leave was discussed only in the context of  options for effectuating termination of Plaintiff's employment, i.e., whether Plaintiff could take short-term disability leave before being officially terminated.  (Pl.'s Dep. at 160; Albar Dep. at 42-44, 175-76; accord, Pl.'s Second Am. Compl., ¶ 28.)  Jan Albar did not know whether disability leave could be given, as opposed to severance pay or other options, so Ms. Albar indicated she would have to discuss the matter with Michael Hicks, Defendant's Vice-President for Human Resources.  (Albar Dep. at 43-44).  On Janaury 16, 2004, Plaintiff was informed that any offer of disability leave could not be given and

4

that the only offer was for a one-month severance pay package upon termination. (Pl.'s Dep. at 172-76.) Plaintiff did not have any doctor's evidence of disability at that time, and Plaintiff stated that she was not disabled. (Albar Dep. at 43-44; Pl.'s Dep. at 157.)

According to a letter sent from Mr. Hicks to Plaintiff's attorney, Plaintiff was "relieved of duty" on January 9, 2004, "pending investigation of charges" of insubordination and use of obscene language. (Pl.'s Resp., Dkt. 19, Ex. 1.) During oral argument, Defendant clarified its position that suspension occurred on January 9, 2004, and that the "pending investigation" meant that if the charges were proven, suspension would automatically become termination under the Medical Center's disciplinary policy. Defendant notes further that both charges were included on the list of misconduct that could result in immediate discharge under the disciplinary policy. (Pl.'s Resp., Ex. 1, Policy Ex. 13.) According to the letter from Mr. Hicks, however, when Plaintiff met with Defendant on January 16, 2004, she was "given the opportunity to resign rather than be terminated" and she was "affectively discharged on January 16, 2004." (*Id.*)

During oral argument, Plaintiff claimed that she was not aware she was terminated until this letter came to her counsel on February 3, 2004. However, in her brief, Plaintiff claimed that she was discharged on January 16, 2004, or sometime thereafter. (Pl.'s Resp. at 17.) Another letter from Defendant denying short-term disability indicates that Plaintiff was terminated on January 12, 2004. (*Id.*, Ex. 12.) Therefore, termination occurred either on January 9, January 12, or January 16, 2004.[2]

It is undisputed that Plaintiff did not apply for FMLA leave until January 19, 2004. (Pl.'s Resp. at 18 & Ex. 10.) On January 16, 2004, Plaintiff requested FMLA paperwork and submitted

---

[2]This is an issue of fact, but, for the reasons indicated below, I conclude that it is not an issue of material fact.

5

a claim for short-term disability leave.  (Pl.'s Dep. at 78; Pl.'s Resp., Ex. 11.)  On January 19, 2004, Plaintiff submitted her request for medical leave under the FMLA.  (Pl.'s Dep. at 78.)  Plaintiff submitted the FMLA request to Chris Sheets in the Human Resources Department pursuant to Jan Albar's direction.  (*Id.* at 79.)  Prior to this request, Plaintiff submitted her leave requests to Randy Wyse, her direct supervisor.  (*Id.*).[3]  Plaintiff did not think that this changed procedure was due to her employment having been terminated.  (*Id.*)

### C. Law and Analysis

#### 1. Motion Standard

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

---

[3] On previous occasions, Plaintiff was granted medical leaves of absence and was returned to the same position she held before she had taken leave.  (Pl.'s Dep. at 78.)

6

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**2.      Discussion**

Plaintiff's second amended complaint avers in a single count that Defendant violated the FMLA "when it refused to reinstate Plaintiff and in terminating her employment" and "when it interfered with her rights under the Act." (Second Am. Compl., Dkt. 7, ¶¶ 52 and 53.) Plaintiff and Defendant have both interpreted these paragraphs to present two issues, i.e., whether

7

Defendant violated the FMLA by interfering with Plaintiff's rights under the Act and whether Defendant's actions constituted unlawful retaliation for Plaintiff's availment of rights under the FMLA. (Pl.'s Resp. at 5.)

Defendant concedes that it is a covered employer and that Plaintiff is an eligible employee. In addition, it appears to be tacitly agreed that Plaintiff had a "serious health condition" that would render FMLA leave appropriate. (Pl.'s Resp., Ex. 14, physician's certification dated January 28, 2004, but see Pl.'s Resp., Ex. 5, indicating Plaintiff could return to work on a reduced schedule for two months and then resume normal employment); *see also* 29 U.S.C. §§ 2611, 2612.

Even assuming Plaintiff has sufficiently pleaded both the interference or entitlement and retaliation claims under the FMLA, and assuming she has shown sufficient evidence of a "serious health condition," I suggest that nevertheless her claim(s) cannot survive summary judgment.

    **a.    Interference or Entitlement Claim**

To prevail on an interference claim under the FMLA, a plaintiff must show that: 1) she is an eligible employee, 2) the employer is a covered employer under the Act, 3) she was entitled to leave under the FMLA, 4) she gave the employer notice of her intention to take foreseeable leave, and 5) the employer denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The employer's intent is not relevant to an interference or entitlement claim. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). However, plaintiffs seeking relief under the interference or entitlement section must prove that the employer's interference caused them harm. *Id.* Interference does not violate the Act if the "employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.*

8

As noted above, the first three elements are not challenged.[4] However, the fourth element, that of notice, has not, I suggest, been satisfied. By her own concession, Plaintiff did not provide the notice required by Defendant's policy until January 19, 2004 when she submitted her FMLA request. (Pl.'s Resp., Ex. 10.) That request was apparently not supported by a physician's certification of a serious health condition until some later date (Pl.'s Resp., Ex. 14, dated January 28, 2004). It is arguable then, that adequate notice was not given until after Plaintiff was terminated.

Plaintiff, however, has alleged that she gave notice of her need for FMLA leave: 1) by submitting her physician's certification that she could return to work on January 9, 2004, and recommending a reduced work week (Pl.'s Resp. at 17), and 2) during her discussion with Jan Albar on January 8, 2004 (*id*. at 16). Since these events preceded her termination on January 16, 2004, or sometime thereafter (Pl.'s Resp. at 17), Plaintiff concludes that she had a right to avail herself of leave under the FMLA. I suggest that neither suffice as notice under the FMLA.

First, the physician's certification indicated her ability to return to work, not a need for leave from work, albeit under a recommendation for reduced work hours for two months before resuming a normal schedule. (Pl.'s Resp. at 17, Ex. 5.) Second, viewing the evidence in the light most favorable to Plaintiff, Plaintiff discussed the possibility or option of FMLA leave with Jan Albar when she also discussed short-term disability on January 8, 2004.[5] At most, this indicates that she was discussing options to delay her termination, not serious medical issues that would prevent her from working. (Pl.'s Second Am. Compl., ¶ 28.) Consequently, this discussion would

---

[4]Although not challenged, Plaintiff stated she was not disabled (Pl.'s Dep. at 157), her physician's certification indicated she could return to work on January 9, 2004 (Pl.'s Resp., Ex. 5) and her physician's certification of the need for leave was not acquired until January 28, 2004 (*Id*., Ex. 14).

[5]Defendant contends that only the short-term disability option was discussed as a possibility other than severance pay or continued employment with a demotion. (Albar Dep. at 42-45.)

9

not provide notice of the need for or intent to request medical leave under the FMLA. *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2006)(finding that Plaintiff's statement that he twisted his knee and had a future doctor's appointment, coupled with calls to security that he would be absent was not sufficient notice to his employer where he did not make any attempt to contact his supervisor or the labor relations department). This conclusion is buttressed by the undisputed evidence that Plaintiff was to return to work on January 9, 2004, according to her own doctor's certification, her failure to submit any other medical evidence until at least January 28, 2004,[6] and her own admission that she was not disabled at the time she discussed her potential options for leave prior to being terminated. (Pl.'s Resp., Exs. 5 & 14; Pl.'s Dep. at 157; Pl.'s Second Am. Compl., ¶ 28.)

I therefore suggest that Plaintiff has not provided sufficient evidence to show that she provided Defendant with notice of her intent to take FMLA leave and thus, that she cannot show interference or entitlement to FMLA leave.

Even if Plaintiff had provided notice of her intent to take FMLA leave, I suggest that her claim cannot survive summary judgment as she has not and cannot show that she was harmed because Defendant had "a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar, supra*. Defendant had cited repeated problems with Plaintiff's ability to get along with her staff and members of the cytology department with whom her department shared space. (Pl.'s Dep. at 81, 83-87, 90, 96-97, 101-04, 107-08.) The apparent final blow came when, on January 8, 2004, Plaintiff used profanity and "disobeyed a directive from her supervisor, Randy Wyse, not to approach the employee who reported the fact that she made the

---

[6]It is not clear from the record exactly when, if ever, this certification was filed. Mr. Hicks' letter to Plaintiff's counsel of February 3, 2004, notes that a completed request for FMLA leave was not yet filed. (Pl.'s Resp., Ex. 1.)

comment to him." (Pl.'s Resp. at 8; Pl.'s Dep. at 115-16.) Defendant's decision to suspend Plaintiff, pending investigation, whether made on January 9, 12, or 16, of 2004, was nevertheless accomplished before her request for FMLA leave on January 19, 2004, and was not considered in the suspension or termination decision. Defendant was not obliged to "discontinue its termination proceedings against her or to afford her additional unpaid leave under the FMLA." *Lochridge v. City of Winston-Salem*, 388 F.Supp 2d 618, 628-29 (M.D.N.C. 2005)(finding no genuine issue of material fact where Plaintiff's request for FMLA leave was submitted four days after the City had suspended her).

Furthermore, Plaintiff cannot use her request for FMLA leave to create a right of continued employment where no such right existed and where termination was in process. 29 U.S.C. § 2614(a)(3)(B)(an employee who requests FMLA leave is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.") Accordingly, I suggest that Plaintiff cannot establish a *prima facie* case of interference with a protected right under the FMLA.

### b.      Retaliation Claim

To establish a *prima facie* case of discrimination, specifically retaliation under the FMLA, the Plaintiff must show that: 1) she availed herself of a protected right under the FMLA, 2) she was adversely affected by an employment decision, 3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Proximity in time can be indirect evidence of a causal connection between exercise of a right under the FMLA and the adverse employment decision. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001). In addition, a request for leave is considered exercise of a right under the FMLA. *Id.* at 314 ("The

right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future.")

The first two elements are conceded. The question thus becomes whether there is a causal connection between the employee's protected activity and the adverse action. Plaintiff relies on the temporal proximity between her request and termination. However, "[s]uch temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Id.* at 317. In other words, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Plaintiff has not come forward with any evidence of pretext or discriminatory animus on the part of the Defendant. Therefore, I suggest that Plaintiff's proffer of temporal proximity is insufficient to show causation or to survive summary judgment.

Finally, I suggest that causation between Plaintiff's request for leave and termination cannot be found where Defendant had already begun the termination process prior to the request for leave. *Zsenyuk v. City of Carson*, 99 Fed. Appx. 794 (9th Cir. 2004)(unpublished)(affirming summary judgment in favor of defendant for failure to establish a genuine issue of fact regarding causation where investigation of Plaintiff's conduct began some time before leave was taken); *Pashoian v. GTE Directories,* 208 F. Supp. 2d. 1293, 1299-1300 (M.D.Fla. 2002)(affirming summary judgment in favor of defendant for Plaintiff's inability to show causation where Plaintiff had received "coaching reports" and was aware of complaints and where defendant's "steps toward Plaintiff's termination were already underway before he filed for FMLA leave"); *Beno v. United Telephone Co. of Florida*, 969 F. Supp. 723, 726 (M.D.Fla. 1997)(granting summary judgment in favor of defendant because plaintiff's "allegation of pretext–that she was terminated because of her request

for medical leave–is undermined by the undisputed fact that [defendant's] steps toward termination were already underway before [plaintiff] requested leave."); *Tuberville v. Personal Finance Corp.*, No. 3:95CV150-B-A, (N.D. Miss. June 5, 1996)(unpublished)(granting summary judgment in favor of defendant on interference and retaliation claims where Plaintiff had been placed on probation in the past and was currently under warning of the need to improve because of the "history of unsatisfactory performance, and where the wheels of termination were put in motion before the request for leave").

Although zealously debated at oral argument, under these facts, I suggest that the exact date of termination is not in fact material. Testimony from both Plaintiff and Defendant show that the negotiation and termination process was underway by the time Plaintiff filed her request for leave. (Pl.'s Dep. at 156-59, 169-76; Albar Dep. at 42-45.) In addition, Plaintiff's complaint acknowledges that any discussion of potential leave was part of the bargaining process regarding termination of her employment. (Pl.'s Second Am. Compl., ¶ 28.) Under the case law cited above, I therefore suggest that Plaintiff has not met her burden to show that any genuine issue of material fact exists to support her claim(s) under the FMLA.

**III.     REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                        s/ *Charles E. Binder*
                                            CHARLES E. BINDER
Dated: May 10, 2006                     United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on Manda L. Anagnost, Craig H. Lubben, and Victor J. Mastromarco, Jr., and served in the traditional manner on Honorable David M. Lawson.

Dated: May 10, 2006                                By        s/Mary E. Dobbick
                                                                         Secretary to Magistrate Judge Binder