UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE CROFOOT,

        Plaintiff,

v.                                     Case Number 05-10032
                                       Honorable David M. Lawson

MIDMICHIGAN MEDICAL
CENTER-MIDLAND,

        Defendant.

_____/

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE, OVERRULING OBJECTIONS, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING ACTION

This matter is before the Court on the plaintiff's objections to Magistrate Judge Binder's report recommending that the Court grant the defendant's motion for summary judgment. The plaintiff filed a claim alleging that the defendant violated the Family and Medical Leave Act (FMLA) when it terminated the plaintiff shortly after she sought medical leave. The plaintiff filed timely objections to the report and recommendation (R&R), and the Court has conducted a *de novo* review. The Court agrees with the magistrate judge's recommendation and adopts the report except as modified by this opinion. The motion for summary judgment will be granted, and the case will be dismissed.

I.

After reviewing the record, the Court believes a discussion of the facts beyond those set forth by the magistrate judge is warranted. The plaintiff, Jacqueline Crofoot, brought suit against defendant MidMichigan Medical Center-Midland, alleging that the defendant violated the FMLA when it terminated her employment and interfered with her rights under the Act. Although the plaintiff's complaint ostensibly asserts only one count (under the heading "Violations of the

FMLA"), *see* Amend. Compl. at ¶¶ 47-55, both parties interpret the complaint as presenting two claims: an FMLA interference claim and an FMLA retaliation claim.

The defendant hired the plaintiff to work as a histology technician in August 1990. In 1994, she was promoted to section head of the Histology Department. In that capacity, she supervised the bench technicians in her department and reported to Laboratory Manager Randy Wyse.

Beginning in 2001, the plaintiff's job performance reviews indicated that she had trouble maintaining professional relationships with her staff. The plaintiff admitted she had difficulty communicating with her subordinates in the histology department, as well as employees of other sections of the hospital, particularly those from the cytology department. She also had used profanity in the office in violation of the defendant's policy, and she had been counseled and trained in this matter several times. Her staff had repeatedly criticized her management style, and these remarks were recorded on her job performance reviews. By 2003, the plaintiff was meeting regularly with her staff, who continued to complain about her treatment of them. The plaintiff admitted to being "stressed," and she apologized to her staff during one of these meetings. However, the pressures facing the plaintiff grew greater in the fall of 2003 when her husband was diagnosed with a mental disorder. This left him unable to care for their three children, and the plaintiff had initiated divorce proceedings. Around this same time, in September 2003, new complaints surfaced about the plaintiff's use of profanity, mood swings, and mistreatment of coworkers.

On January 7, 2004, the plaintiff sought professional medical counseling for the stress and anxiety she was experiencing. Her physician provided her with a "Certificate to Return to Work,"

-2-

indicating she could return on January 9, 2004, but with the recommendation that she reduce her work week from five to three days per week for two months and then resume normal work hours.

On January 8, 2004, the plaintiff returned to work to give the Certificate to her employer, but she also inappropriately used profanity when discussing one of her subordinates. The plaintiff told a co-worker, Diane Keeley, that she wished another co-worker, Debi Kroll, would "shut the f**k up" and "keep her f**king mouth shut." Def.'s Mot. for Summ. J., Ex. 1, Crofoot Dep at 116. Keeley reported the incident to the plaintiff's supervisor, Randy Wyse, and when discussing this incident with Wyse, the plaintiff again began using profanity. The plaintiff suggested she should go downstairs and tell Keely to "keep her f**king mouth shut." Def.'s Mot. for Summ. J, Ex. 5, Wyse Dep. at 14. Wyse told the plaintiff not to confront Keely, but the plaintiff did so anyway. Keeley reported back to Wyse and said that the plaintiff had accosted her in direct violation of Wyse's order.

The plaintiff also spoke with the defendant's employee relations manager, Jan Albar, on January 8, 2004. The plaintiff told Albar about the incident with Keeley and Wyse, and Albar directed the plaintiff to take medical leave from January 9 through January 12, and to then speak with Wyse on January 13. The plaintiff also testified that she discussed with Albar the possibility of FMLA leave at this meeting.

On January 9, 2004, employees in the histology department met with Ms. Albar and informed her they could no longer work with the plaintiff. The employees reported that they were afraid of the plaintiff, they believed they were working in a hostile environment, and they would quit if something were not done. This problem was discussed at a meeting between Ms. Albar and Mr. Wyse that afternoon, and according to their depositions, it was at this time they decided the plaintiff

needed to be terminated. Nevertheless, there is a fair amount of uncertainty in the record about when the plaintiff in fact was terminated.

The plaintiff met again with Jan Albar on January 13, 2004. The plaintiff testified that at this meeting Albar suggested she could take a thirteen-week, short-term disability leave and resign at the end of that period. That offer apparently was in lieu of immediate termination. The plaintiff thought the idea of disability leave was strange because she was not disabled, but she said she would think about it. However, Albar testified as though such an offer was never made during that meeting, and the first time the short-term disability proposal came up was on January 16.

On January 16, 2004, the plaintiff requested FMLA paperwork from Chris Sheets, an employee in the human resources department, and submitted a claim for short-term disability leave. She formally applied for FMLA leave on January 19, 2004 when she submitted the form to Ms. Sheets in the human resources department.

The plaintiff had another meeting with Jan Albar and Randy Wyse on January 16, 2004. The parties dispute exactly what transpired at that meeting. The plaintiff asserts that the meeting was held to revisit the short-term disability leave offer made previously by Albar. The plaintiff testified that she told Albar and Wyse she wanted to take FMLA leave instead of short-term disability leave. In the plaintiff's view, because she "wasn't disabled . . . , to take a disability leave didn't make sense." Def.'s Mot. for Summ. J., Ex. 1, Crofoot Dep. at 157. The defendant asserts, on the other hand, that the plaintiff was informed by Wyse and Alber that her employment was being terminated due to use of obscene language, hostility towards workers, and insubordination. This version of events is supported by the deposition testimony of both Albar and Wyse.

Although plaintiff admits that Albar and Wyse discussed her abusive behavior and insubordination and she understood her job was in jeopardy, she maintains that she was never told "point blank" that she was being terminated. Def.'s Mot. for Summ. J., Ex. 1, Crofoot Dep. at 163. Instead, she was under the impression that she would continue to be employed until Albar had a chance to talk with Mike Hicks regarding the possibility of taking FMLA leave. This account is undermined, however, by the plaintiff's testimony that she cleaned out her office at the conclusion of the January 16, 2004 meeting. Albar also testified that she and Wyse reviewed with the plaintiff a document detailing the reasons for the plaintiff's discharge. Wyse testified that he first learned that the plaintiff was considering applying for FMLA leave on January 16. Albar testified that the plaintiff asked about the possibility of taking a demotion or short-term disability leave, not FMLA leave. Wyse told the plaintiff that a demotion was not an option, and although Albar did not believe disability leave was an option because the plaintiff was not disabled, she told the plaintiff she would discuss this idea with Hicks. This may explain why the plaintiff believed she was not yet officially terminated on January 16.

Albar testified that she spoke with Hicks on January 19, 2004 regarding the short-term disability idea, meaning that the plaintiff would take short-term disability and resign at the end of her leave. Albar stated Hicks said the idea was "totally inappropriate" because "you don't offer that to somebody you have grounds to dismiss." Def.'s Mot. for Summ. J., Ex. 3, Albar Dep at 45. That same day, Albar told the plaintiff that disability leave was not an option. According to the plaintiff, Albar also told her at that time that if she chose to resign, she would receive a severance package including one-month's pay.

According to a letter sent by Mr. Hicks to the plaintiff's attorney, the plaintiff was relieved of duty on January 9, 2004 pending an investigation into charges of insubordination and use of obscene language. At oral argument, counsel for the defendant clarified this assertion, stating that pursuant to the defendant's disciplinary procedures, the plaintiff had been placed on suspension until the conclusion of the investigation into the charges, at which time, if the charges were found to be true, the suspension would automatically ripen into a discharge. The letter from Hicks also states that when the plaintiff met with the defendant's agents, she was offered the chance to resign in lieu of termination, she failed to respond in a timely manner, and she therefore was effectively discharged on January 16, 2004. The plaintiff claimed during oral argument that she was unaware of her discharge until Mr. Hicks's letter came to her counsel in February 2004, and in her brief on summary judgment the plaintiff claimed she was discharged "sometime after" January 16. Resp. Brf. at 17. Another letter from the defendant denying short-term disability indicates that termination occurred on January 12, 2004. On balance, it appears that the plaintiff was terminated on either January 9, 12, 16, or 19, 2004.

The plaintiff started the present litigation on February 1, 2005; as noted, the amended complaint has been construed to state both an interference (or entitlement) claim and a retaliation claim under the FMLA. On October 21, 2005, the defendant filed the present motion for summary judgment, and the matter was referred to Magistrate Judge Binder for preparation of a report and recommendation on November 8, 2005. After hearing oral argument, Magistrate Judge Binder issued his report on May 10, 2006 recommending that the Court grant the defendant's motion. The plaintiff filed timely objections to which the defendant responded.

-6-

II.

The magistrate judge analyzed separately the plaintiff's entitlement and retaliation claims, but he found that each failed for the same basic reason: the plaintiff cannot demonstrate that the defendant terminated her because she sought to exercise her FMLA rights rather than because she was a bad employee. Magistrate Judge Binder found that although the date of plaintiff's termination is in dispute, the issue is not material to the case because, regardless of when the plaintiff was terminated, the plaintiff did not apply for FMLA leave until January 19, 2004 after all of the disputed dates had passed.

Turning to the interference claim, Magistrate Judge Binder found that the plaintiff had not given notice to the defendant of her intent to exercise her FMLA rights until January 19, 2004 at the earliest. He rejected the idea that the plaintiff had put the defendant on notice on January 9, 2004 by submitting the doctor's certification recommending a reduced work week and discussing the possibility of leave with Jan Albar. Judge Binder found therefore that the plaintiff failed to satisfy the notice requirement for purposes of an FMLA entitlement claim.

The magistrate judge also found that, even if the plaintiff had provided notice of her intent to take FMLA leave prior to her termination, her claim could not survive because the defendant had a "legitimate reason [to fire the plaintiff] unrelated to the exercise of FMLA rights for engaging in the challenged conduct." R&R at 10. Given the overwhelming evidence that the plaintiff was a difficult employee and had engaged in conduct that repeatedly violated the defendant's policies, coupled with the plaintiff's own admission that she disobeyed a direct order from her supervisor not to accost a fellow employee, Magistrate Judge Binder found that the plaintiff's claims cannot survive summary judgment.

With regard to the retaliation claim, the magistrate judge found that there was no causal connection between the adverse employment action and the plaintiff's attempt to exercise her FMLA rights. The close proximity in time between the plaintiff's attempt to exercise her rights and the plaintiff's termination, the magistrate judge found, is not sufficient by itself to make out a successful retaliation claim in this case. In addition, the magistrate judge found that the defendant already had begun the termination process before the plaintiff made any request for FMLA leave, which precluded any finding of a causal connection.

### III.

The plaintiff objects to the R&R on several grounds. She contends that the evidence shows that she requested FMLA leave on January 8, 2004, she was not terminated until several days later, and this sequence of events creates a fact question on whether her employer fired her because she took FMLA leave. She insists, therefore, that Magistrate Judge Binder's conclusion that the termination date is immaterial is erroneous. She also argues that she was unaware she had been terminated until February 3, 2004 when Mr. Hicks sent a letter to the plaintiff's counsel stating that the plaintiff had been terminated on January 16. Because her options were still being discussed when she sought to invoke her FMLA rights (even if one accepts Judge Binder's conclusion that she did not apply for FMLA leave until January 19, 2004), the plaintiff contends this shows that the decision to terminate her was made in retaliation for the exercise of her FMLA rights. Finally, the plaintiff asserts that, contrary to the magistrate judge's conclusion, there exists a causal connection between her protected activity (requesting FMLA leave) and the adverse employment action (her termination); and her termination for using profanity was simply a pretext because she had used profanity in the workplace for quite some time and Albar testified that this alone was not sufficient

grounds for termination. The plaintiff argues that evidence of pretext lies in the fact that the defendant deviated from its normal procedure in terminating her, established by the defendant's departure from its normal procedure when it failed to afford her the benefit of a leave of absence and progressively discipline her.

The plaintiff does not dispute the summary judgment standard employed by the magistrate judge. Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The Family and Medical Leave Act "entitles qualifying employees to twelve weeks of unpaid leave each year if, among other things, an employee has 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Such rights include the right to take FMLA leave, as well as reinstatement upon return to the position the employee held before taking the leave or to an equivalent position. 29 U.S.C. § 2614(a)(1). "The substantive right to reinstatement provided in § 2614(a)(1), however, 'shall [not] be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any

right, benefit, or position of employment to which the employee would have been entitled had the employee not taken the leave.'" *Arban v. West Publ'n Corp.*, 345 F.3d 390, 400 (6th Cir. 2003) (quoting 29 U.S.C. § 2614(a)(3)(B)). "Employers who violate § 2615 are 'liable to any eligible employee affected' for damages and 'for such equitable relief as may be appropriate.' " *Cavin*, 326 F.3d at 719 (quoting 29 U.S.C. § 2617(a)(1)). To apprise an employer sufficiently that FMLA leave is sought, an employee need not mention the FMLA expressly but simply notify the employer that FMLA-qualifying leave is required. *Arban*, 345 F.3d at 400 (citing 29 C.F.R. § 825.303(b)).

Both interference and retaliation claims are authorized by the FMLA. *Arban*, 345 F.3d at 400-01. An interference claim is brought when an employer has denied the employee either the requested medical leave, or has refused to reinstate the employee to the employee's former position (or an equivalent position) after taking FMLA leave. *Id.* at 400-01. To make out an interference claim under the FMLA, a plaintiff must demonstrate that: (1) the employee is eligible for FMLA rights; (2) the employer is covered under the FMLA; (3) the employee was entitled to FMLA leave; (4) the employee provided the employer with notice of intent to take foreseeable leave; and (5) the employer denied the employee the FMLA benefits to which the employee was entitled. *Cavin*, 326 F.3d at 719. An employer's intent with regard to FMLA rights is irrelevant in an interference claim, as the issue concerns a right to an entitlement. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006); *Arban*, 345 F.3d at 401. "By the same token, the FMLA is not a strict-liability statute." *Edgar*, 443 F.3d at 507. Rather, employees must prove that the employer's interference with FMLA rights "caused them harm." *Id.* at 508. Accordingly, interference does not violate the FMLA if the "employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Ibid.*; *see also Arban*, 345 F.3d at 401 (stating that "[a]n employee lawfully

may be dismissed . . . if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave").

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) the plaintiff availed herself of a protected right under the FMLA; (2) the plaintiff was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001); *see also Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Requesting FMLA leave is considered a protected right under the FMLA, retaliation for which constitutes a violation of the FMLA. *Skrjanc*, 272 F.3d at 314 (explaining that "[t]he right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future"). In contrast to an interference claim, "an employer's motive *is* an integral part of the analysis . . . because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoke their FMLA rights." *Edgar*, 443 F.3d at 508.

In the present case, the main issue surrounding the plaintiff's retaliation claim is whether she was terminated because she sought FMLA leave. There is no direct evidence of this, so the plaintiff must rely on inference to prove illegal conduct in both her interference and retaliation claims. When a plaintiff relies on indirect evidence in FMLA retaliation cases, as in most employment discrimination cases, courts follow the familiar three-step *McDonnell Douglas* analysis. *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (noting that "federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green,* 411 U.S. 792, (1973), and *Texas Dep't of Community Affairs v.*

*Burdine,* 450 U.S. 248 (1981). *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989), *overruled on other grounds by* Pub.L. 102-166, § 101 (noting that "this scheme of proof, structured as a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination . . . , should apply to claims of racial discrimination under § 1981") (internal quotes and citation omitted).

Under the *McDonnell Douglas* analysis, a plaintiff must first make out a *prima facie* case of retaliation under the FMLA. *Skrjanc*, 272 F.3d at 315. "The burden then shifts to [the defendant] to articulate a legitimate, non-discriminatory reason for [the plaintiff's] discharge." *Ibid.* If the defendant articulates such a reason, the plaintiff then has the burden of showing that the defendant's articulated reason is a pretext. *Ibid.* "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998) (citing *Kocsis v. Multicare Management, Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)); *see also Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

The main thrust of the defendant's motion for summary judgment was that the evidence of its legitimate reasons for firing the plaintiff – that is, her insubordination and use of obscene language – is so one sided that no reasonable fact finder could conclude that the plaintiff would not have been terminated but for her exercise of FMLA rights, or that these legitimate reasons were a pretext for retaliation. The magistrate judge concluded that the plaintiff could not establish fact issues on these elements, and the Court agrees, although for slightly different reasons than suggested by the magistrate judge.

There are genuine issues of fact concerning when the plaintiff notified the defendant of her intent to exercise her FMLA rights and when the plaintiff was actually terminated, as she contends. But these issues are not material; they give rise to an argument that the timing of the leave request in relation to the termination allows an inference of improper motivation on the defendant's part. However, the Sixth Circuit holds that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317. *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (explaining that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence"); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-98 (10th Cir.1997) (holding that temporal proximity alone does not establish pretext for discharge under the FMLA). The plaintiff's claims fail due to the overwhelming evidence showing that she would have been terminated regardless of her attempts to secure FMLA leave.

Nonetheless, the plaintiff is correct in her observation that Magistrate Judge Binder erred in his failure to acknowledge that the plaintiff's submission of the "Certificate of Return to Work" may qualify as providing notice under the FMLA. But that evidence does not help the plaintiff's case. The Certificate, issued by the plaintiff's doctor, recommended that the plaintiff return to work but only work three days per week for the next two months. To avail herself of the protections of the FMLA, the plaintiff was required to notify the defendant that FMLA-qualifying leave is needed. *Arban*, 345 F.3d at 400; 29 C.F.R. § 825.303(b). The FMLA provides that leave may be taken on an "intermittent basis" when it is taken due to "a serious health condition." 29 U.S.C. § 2612(b)(1). It appears the magistrate judge assumed that the plaintiff was not seeking FMLA leave simply because she did not ask for a non-intermittent period of leave. *See* R & R at 9 (rejecting contention

that the certificate provided notice because, *inter alia*, it "indicated her ability to return to work, not a need for leave from work, albeit under a recommendation for reduced work hours for two months"). However, the plaintiff's condition (i.e., being "stressed" and suffering from anxiety) would probably not qualify as a "serious health condition," because the plaintiff did not offer evidence that she required treatment in a hospital or continuing care by a health provider. *See Hoffman v. Professional Med. Team*, 394 F.3d 414, 418 (6th Cir. 2005) (stating that a "'serious health condition' is one that involves either inpatient treatment in a hospital or continuing treatment by any health care provider").

The plaintiff's objection to the magistrate judge's conclusion that she did not invoke her FMLA rights until she formally filed her forms on January 19, 2004 may also have some technical merit. An employee need not mention the FMLA specifically when requesting leave; she simply may notify the employer that FMLA-qualifying leave is required. *Arban*, 345 F.3d at 400. A reasonable finder of fact could possibly conclude that the plaintiff first satisfied the notice requirement on January 8, 2004 when she allegedly discussed FMLA leave with Jan Albar. However, even if the plaintiff could establish that she first invoked her FMLA rights on January 8, 2004 prior to her termination, her claims would still fail. (The same conclusion must be reached as to the objection concerning the materiality of the precise date of the plaintiff's termination.) Although a jury could find that the plaintiff was terminated on January 9, 12, 16, or 19, the plaintiff cannot establish that she would not have been terminated but for the exercise of her FMLA rights or that the defendant's proffered reason for terminating her was a pretext.

As Magistrate Judge Binder correctly found, the plaintiff's entitlement claim is defeated because "she cannot use her request for FMLA leave to create a right of continued employment where no such right existed and where termination was in process." R & R at 11 (citing 29 U.S.C. § 2614(a)(3)(B)). The overwhelming evidence in this case suggests that the plaintiff was headed for termination, and her exercise of FMLA rights had nothing to do with it. The plaintiff had longstanding problems maintaining professional relationships with her staff and co-workers, she frequently used profanity, and, more importantly, she disobeyed a direct and serious order given by her supervisor. Other employees also had informed the defendant that they feared the plaintiff and would consider quitting if something was not done. Although there is some ambiguity about when the decision to terminate the plaintiff was made, it is clear that it was precipitated entirely by the plaintiff's hostile confrontation of Dianne Keeley in direct violation of Randy Wyse's order and the effect of the plaintiff's prior behavior on her coworkers. Wyse testified that when he learned of the insubordination, he concluded that it "was a group two violation, according to our policy, which usually is immediate suspension with an investigation and can lead to termination." Def.'s Mot. for Summ. J., Ex. 5, Wyse Dep. at 14. Following a conversation with Jan Alber on January 9, 2004, both Wyse and Alber were in agreement that the plaintiff's conduct warranted termination. *Id.* at 15; Def.'s Mot. for Summ. J., Ex. 3, Alber Dep. at 37-38. Albar stated they "had no other choice but to terminate [the plaintiff]" because she had been insubordinate and "three good employees . . . were going to quit." *Id.* at 37.

Even if the Court assumes for the purpose of this motion that the plaintiff was terminated in close proximity to her request for FMLA, the evidence offered by the plaintiff fails to undercut or challenge these reasons for termination in a way that would permit a fact finder to conclude that they

-15-

were illegitimate. The plaintiff, therefore, cannot dispel the conclusion that show that "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401. Nor has the plaintiff offered any evidence that the "proffered reason[s] had no basis in fact, did not actually motivate its decision, or w[ere] never used in the past to discharge an employee." *Smith*, 155 F.3d at 805-06.

The plaintiff points to evidence that Jan Albar stated the plaintiff's rude behavior and use of obscenity would not warrant termination. She cites *DeBoer v. Muashi Auto Parts,* 124 Fed. App'x. 387 (6th Cir. 2004), for the proposition that a claim of pretext is supported when an employer has no significant problem with an employee's misconduct until after she exercises her rights. However, the evidence plainly shows that use of obscene language was not the sole reason for termination, and the plaintiff was not terminated merely for this behavior. Rather, the decision to fire her was not made until she confronted a coworker about a complaint, in direct opposition to explicit instructions to the contrary, thereby committing insubordination, which caused her coworkers to consider resigning. Albar's testimony, therefore, does not support pretext.

The plaintiff also argues that evidence of pretext can be found in the defendant's deviation from its ordinary policy of progressive discipline. To establish that the defendant normally employs a progressive discipline policy, the plaintiff points to the deposition testimony of Michael Hicks, who testified that the company will begin with verbal counseling before other action is taken. However, Hicks also testified that the progressive discipline policy is not "mandatory," and the policy statement itself indicates that "for combined violations over a short period of time involving the same or different acts, a more severe penalty may be imposed by treating the violations together," *see* Resp. Brf., Ex. 13, Progressive Discipline Policy at 2, and "the fact that progressive

discipline has not occurred will not effect the appropriateness of the action," *id.* at 3. The policy also provides that discharge may occur "for a very serious violation or for repeated minor violations over a short period of time." *Ibid.* Moreover, "gross acts of insubordination," designated as Group II Violations, will "subject [the employee] to immediate suspension followed by a thorough investigation surrounding the circumstances." *Id.* at 3. The policy statement warns, "You may be subject to discharge if the investigation shows that you committed the alleged violation." *Ibid.* Consistent with the Policy, Randy Wyse testified that the gross insubordination the plaintiff committed when she disobeyed a direct order, along with the long pattern of abusive behavior the plaintiff manifested towards her staff, her use of profanity, and the fact that the plaintiff's staff members were threatening to quit, all led inevitably to the decision to terminate the plaintiff. *See* Def.'s Mot. for Summ. J., Ex. 4, Wyse Dep. at 4, 14, 17.

Contrary to the plaintiff's argument, the evidence shows that the defendant followed its discipline policy. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414 (6th Cir. 1999), cited by the plaintiff, furnishes no support for her position. In that case, the court held that the implausibility of the defendant's explanation for deviating from its discipline policy could fortify a claim of pretext. However, in this case the discipline conformed to the written policy, so no "explanation" was forthcoming, and therefore pretext has not been shown.

The Court concludes that the plaintiff has not brought forth evidence to prove essential elements of her interference and retaliation claims. Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991). Summary judgment for the defendant is therefore required.

IV.

The Court finds that the magistrate judge's recommendation withstands the *de novo* review conducted by the Court. Therefore, the Court will adopt the report and recommendation.

Accordingly, it is **ORDERED** that the Magistrate Judge's Report and Recommendation [dkt #26] is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections [dkt #27] are **OVERRULED**.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt #16] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

        s/David M. Lawson
        DAVID M. LAWSON
        United States District Judge

Dated: March 30, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2007.

        s/Felicia M. Moses
        FELICIA M. MOSES